J-S16003-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.L., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 442 EDA 2021 |

Appeal from the Order Entered February 3, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000610-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: D.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.L., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 443 EDA 2021 |

Appeal from the Order Entered February 3, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002658-2018

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:               **FILED JUNE 24, 2021**

T.L. (Father) appeals from the orders entered on February 3, 2021, involuntarily terminating his parental rights to D.L. (Child), born in December of 2018, and changing the goal for Child from reunification to adoption. We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

On appeal, Father's brief provides the following questions for our review:

1. [W]hether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights, where such determination was not supported by clear and convincing evidence under the [A]doption [A]ct, 23 Pa.C.S.[] § 2511(a)(2).

2. [W]hether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of the [C]hild as required by the [A]doption [A]ct, 23 Pa.C.S.[] § 2511(b).

3. [W]hether the trial court erred in involuntarily terminat[ing] [F]ather's parental rights as [Father] was not given single case plan goals to accomplish, nor was considered a viable reunification resource from the outset due to his incarceration. 42 Pa.C.S.[] § 6351 and 23 Pa.C.S.[] § 2511(b).

Father's brief at 8.[1]

We review an order terminating parental rights in accordance with the

following standard:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the

---

[1] Although Father lists these three issues in his brief, he has not included a section with discussion relating to the third issue. Furthermore, he has omitted any argument relating to the goal change order and, therefore, we conclude that he has waived that issue. *See* Pa.R.A.P. 2119(a), *R.L.P. v. R.F.M.*, 110 A.3d 201, 208-09 (Pa. Super. 2015) (stating that arguments not appropriately developed are waived).

record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). The burden is upon the petitioner to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276. Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

We have reviewed the certified record, the briefs of the parties, the applicable law, and the comprehensive opinion authored by the Honorable Joseph Fernandes of the Court of Common Pleas of Philadelphia County, dated March 25, 2021. We conclude that Judge Fernandes' well-reasoned decision properly disposes of the issues raised by Father. In particular, Judge Fernandes notes that "Father has been incarcerated pre-trial for the life of the

case and has been charged with and alleged to have committed Mother's murder." Trial Court Opinion, 3/25/2021, at 11. The judge also observed that "Father has had no contact with Child and has not seen her since the day of Mother's death when … Child was five-days old." *Id.* at 12. Furthermore, Father has not taken any affirmative action to show interest in Child during the twenty-six months she has been committed to the custody of the Department of Human Services. The judge concluded that "[g]iven … Child's age and her lack of visits with Father, Child does not know Father." *Id.* Rather, Child has been in the care of her maternal aunt, who has met Child's needs. Thus, we conclude that Judge Fernandes' opinion properly disposes of the issues Father raises in this appeal. Accordingly, we adopt Judge Fernandes' opinion as our own and affirm the orders appealed from on that basis.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/24/2021

# IN THE COURT OF COMMON PLEAS
# FOR THE COUNTY OF PHILADELPHIA
# FAMILY COURT DIVISION

In the Interest of D.L., a Minor

            :     CP-51-DP-0002658-2018
            :     CP-51-AP-0000610-2019
            :
            :     FID:   51-FN-002305-2018
            :

APPEAL OF: T.L., Father

            :     443 EDA 2021
            :     442 EDA 2021

**OPINION**[1]

**Fernandes, J.:**

Appellant T.L. ("Father") appeals from the order entered on February 3, 2021, granting the petition filed by the Philadelphia Department of Human Services ("DHS"), to involuntarily terminate Father's parental rights to D.L. ("Child"), pursuant to the Adoption Act, 23 Pa.C.S.A. §2511(a)(2) and (b), and to change Child's permanency goal from reunification to adoption, pursuant to 42 Pa.C.S.A. §6351. Harry R. Levin, Esquire, counsel for Father ("Father's Counsel") filed timely Notices of Appeal with a Statement of Matters Complained of on Appeal pursuant to Rule 1925(b) on February 5, 2021. Father's Counsel withdrew and discontinued Father's Appeal on February 24, 2021. On March 2, 2021, Father's Counsel re-filed Notices of Appeal ("Notice") with Statements of Matters Complained of on Appeal pursuant to Rule 1925(b) ("Statement").

**Factual and Procedural Background:**

DHS received a Child Protective Services ("CPS") report stating that between the hours of 4:30 A.M. and 6:00 A.M. on December 14, 2018, Father allegedly shot and killed Mother[2], while she held Child[3]. At the time of Mother's death, the Child was five days old. Child's date of birth is

---

[1] The trial court requested the Notes of Testimony for February 3, 2021, on February 5, 2021. The Notes of Testimony for February 3, 2021, were uploaded on February 17, 2021. On March 8, 2021, the trial court transitioned judicial law clerks and the new law clerk obtained access to the Notes on March 9, 2021.
[2] Mother's D/O/D was December 14, 2018. Mother's Death Certificate lists her cause of death as multiple gunshot wounds and her manner of death as a homicide.
[3] Mother had two other children with a different father. These two children are not involved in this appeal.

December 9, 2018. Father was reportedly evading the police at that time. Mother and Father had a history of domestic violence. Father has an extensive criminal history stemming as far back as December 2008, including being found guilty of driving under the influence of a controlled substance in March 2010. After the incident, Child was examined at St. Christopher's Hospital for Children in Philadelphia and did not have any medical issues. On December 14, 2018, DHS filed an Application for an Emergency Order of Protective Custody ("OPC") for Child. The OPC was obtained and Child was placed in Maternal Aunt's care. DHS visited Maternal Aunt's home the same day and determined Child was safe. Father surrendered himself to the Philadelphia Police Department ("PPD") on the morning of December 17, 2018, and was arrested. Father has been charged with the following criminal acts: murder, firearm charges, endangering the welfare of children, and tampering with physical evidence. Father was denied bail. Father has been continuously incarcerated at Curran-Fromhold Correctional Facility ("CFCF") awaiting trial.

On December 17, 2018, the OPC was lifted and the temporary commitment to DHS was ordered to stand at a shelter care hearing[4]. A stay-away order was issued against Father and all visits were suspended. DHS filed a Dependency Petition on December 24, 2018, asking the trial court to adjudicate Child dependent under the Juvenile Act, 42 Pa.C.S.A. §6302 "Dependent Child" (1). On January 29, 2019, the trial court held an adjudicatory hearing, where Child's temporary commitment to DHS was discharged; Child was adjudicated dependent and fully committed to DHS. The trial court determined Child would remain in kinship care with Maternal Aunt, and DHS was ordered to refer Maternal Aunt for kinship care services. Father's Counsel was present. The Community Umbrella Agency ("CUA") was identified as Tabor Children Services by DHS on January 10, 2019.

The CUA held a Single Case Plan ("SCP") meeting on February 20, 2019. Father did not participate in the meeting. Child's goal was reunification. Father's objective was to comply with the stay-away order issued on December 17, 2018.

---

[4] Between December 17, 2018, and March 11, 2020, the trial court judge assigned to this matter was The Honorable Judge Vincent W. Furlong. From September 4, 2020, to the present, the trial court judge assigned to this matter is The Honorable Joseph Fernandes.

An initial permanency review hearing was held on April 16, 2019. Father's Counsel was present. Child's placement remained necessary and appropriate and she was ordered to remain in kinship care with Maternal Aunt. Father was to avail and remain in contact with CUA. Visits remained suspended. Further permanency review hearings were held on May 21, 2019, July 30, 2019, and October 22, 2019. Father's Counsel was present each time. Child's placement remained necessary and appropriate and she was ordered to remain in kinship care with Maternal Aunt. CUA was to continue to make outreach to Father. Visits remained suspended and the stay-away order in place. The trial court also ordered that visitation with paternal relatives was not to occur until ordered by the court

On August 14, 2019, DHS filed Petitions to involuntarily terminate Father's parental rights and change Child's permanency goal from reunification to adoption. On September 4, 2020, the termination trial was continued, but a permanency review hearing was held. Father was found minimally compliant with his permanency plan and visits with Child continued to be suspended due to grave threat presented by Father. Father was to be referred to the Achieving Reunification Center ("ARC") for services and anger management should he be released from prison. The stay-away order continued to stand.

The termination and goal change trial was held February 3, 2021. Father and Father's Counsel were present. Father was on the telephone from the county jail. Father's Counsel indicated that although he had explored voluntarily relinquishment of parental rights with Father, Father declined. Father also declined to voluntarily relinquish his rights when asked on the record. (N.T. 02/03/21, pgs. 74-75). DHS requested the trial court to terminate Father's parental rights under 23 Pa.C.S.A. §2511(a)(2), (5), (8), and (b). (N.T. 02/03/21, pg. 70); however, the trial court found clear and convincing evidence to change Child's permanency goal to adoption and to involuntarily terminate Father's parental rights pursuant only to 23 Pa.C.S.A. §2511(a)(2) and (b). (N.T. 02/03/21, pgs. 76-78). On March 2, 2021, Father's Counsel re-filed this appeal on behalf of Father. Father's Counsel had previously withdrawn the appeal on behalf of Father.

**Discussion[5]:**

On appeal of the involuntary termination of Father's parental rights and goal change, Father asks if the trial court committed reversable error when:

1. It involuntarily terminated Father's parental rights (and changed the goal to adoption) where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.A. §2511(a)(2)?

2. It involuntarily terminated Father's parental rights (and changed the goal to adoption) without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of the child as required by the Adoption Act, 23 Pa.C.S.A. §2511(b)?

3. Because the evidence was overwhelming and undisputed that father demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with his child.

A party waives their right to appeal an order if notice of the appeal is not filed within 30 days after the entry of the relevant order. _Koken v. Colonial Assur. Co._, 885 A.2d 1078, 1101 (Pa. Commw. 2005). An issue is also waived where it is not specifically presented in the Appellant's Pa.R.A.P. 1925(b) statement. _In re C.P._, 901 A.2d 516, 522 (Pa. Super. 2006); _See also In re J.E.D._, 879 A.2d 288, 293, fn. 7 (Pa. Super. 2005). Father re-filed his appeal within 30 days after the entry of the relevant order. Father's Counsel did file two Notices and Statements under Rule 1925(b), one under the AP-docket and one under the DP-docket. Consequently this opinion will address the termination pursuant to 23 Pa.C.S.A. §2311(a)(2) and (b); and changing the Child's permanency goal from reunification to adoption pursuant to 42 Pa.C.S.A. §6351. .

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511(a), which provides the following grounds for §2511(a)(2):

(a) **General rule** - The rights of a parent, in regard to a child, may be terminated after a

---

[5] The testimony for this matter starts on page 41 of the Notes of Testimony dated February 3, 2021.

petition is filed on any of the following grounds:

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for [her] physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

In proceedings to involuntarily terminate parental rights, the burden of proof is on the party seeking termination, which must establish the existence of grounds for termination by clear and convincing evidence. _In re Adoption of Atencio_, 650 A.2d 1064, 1066 (Pa. 1994). The clear and convincing standard means the evidence "is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." _Matter of Sylvester_, 555 A.2d 1202, 1203-1204 (Pa. 1989). §2511(a)(2) focuses on the child's present and future need for essential parental care, control, or subsistence necessary for their physical or mental well-being. _In re Adoption of M.J.H._, 501 A.2d 648, 654 (Pa. Super. 1985). Even if a parent demonstrates love for their child or makes efforts to perform their duties, if a parent's incapacity cannot be remedied, their parental rights may be terminated. _Id_.

In instances where a parent is incarcerated, §2511(a)(2) requires the trial court to focus on the effects of the incarceration on the child, rather than the mere fact of a parent's incarceration. _Id_. Incarceration, while not a litmus test for termination of parental rights, can be determinative of the question of whether a parent is incapable of providing essential parental care, control, or subsistence to their child. _In re Adoption S.P._, 47 A.3d 817, 830 (Pa. 2018). Incarceration does not relieve a parent of their obligation to perform their parental duties and a parent must utilize available resources to continue their relationship with a child. _In re J.T.M._, 193 A.3d 403, 409 (Pa. Super. 2018) (citing _In re Adoption of S.P._, 47 A.3d at 828). _See also In re B.,N.M._, 856 A.2d 847, 855 (Pa. Super. 2004). The cause of a parent's incarceration is also relevant to the §2511(a) analysis, where their actions were a factor in support of a child's removal. _In re. Z.P._, 994 A.2d 1108 (Pa. Super. 2010) (citing _In re C.L.G._, 956 A.2d 999, 1006 (Pa. Super. 2008) (_en banc_)). Incarceration also does not permit a parent to "wait[] for a more suitable or convenient time to perform one's parental responsibilities while others provide" for the child's needs. _In re B.,N.M._, _supra_. The length of a prison sentence may also be relevant to a trial court's consideration. _In re_

*Adoption of K.J.*, 936 A.2d 1128, 1134 (Pa. Super. 2007) (upholding a termination where a mother's minimum sentence of eighteen years for would prevent rectification of the conditions of incapacity in a timely manner). While incarceration is not a litmus test for termination, it will also not toll a parent's duties toward their child. Further, while "sincere efforts to perform parental duties" may preserve parental rights under §2511(a)(1), the same efforts may be insufficient under (a)(2). *In re Z.P.*, *supra* (citing *In re. Adoption of M.J.H.*, *supra*). A parent does not perform their duties by displaying merely a passive interest in a child's development. *In re B.,N.M.*, 856 A.2d at 855 (Pa. Super. 2004) (citing *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003)). Nor does a parent protect their parental rights by simply stating they wish to retain those rights. *Id.* Parental obligation is a positive duty, which requires affirmative performance by a parent. *Id.* A parent is not asked to perform the impossible, but a parent must act reasonably and in good faith. *Id.* at 846.

Child was born on December 9, 2018. At the time of Mother's death, Child was five days old. Child was found in the home where Mother was deceased on December 14, 2018. (N.T. 02/03/21, pg. 45-46). At this point, Maternal Aunt made herself available when the Child was taken to the hospital. Child has been continuously in Maternal Aunt's care since that time. (N.T. 02/03/21, pgs. 45-46). Father has been incarcerated pre-trial for the life of the case and has been charged with and alleged to have committed Mother's murder. (N.T. 02/03/21, pgs. 45, 58). Father was denied bail on December 17, 2018. Mother's death certificate lists her cause of death as multiple gunshot wounds and her manner of death as a homicide. Child was in the home at the time of Mother's death. (N.T. 02/03/21, pg. 45). As a result of the bases for adjudication and the criminal allegations, Father was ordered to stay-away[6] from Child and the caregiver, pursuant to the order of the Dependency Court at the shelter care hearing and pursuant to the criminal court order. (N.T. 02/03/21, pgs. 49-50). At the shelter care hearing, the trial court found that Father presented a grave threat to Child and visits were suspended. (N.T. 02/03/21, pg. 79). The grave threat standard is met when evidence clearly shows a parent demonstrates severe mental or moral deficiencies

---

[6] Where a no-contact or stay-away order has been issued against a parent with respect to a child, the situation is analogous to those encountered by parents serving long prison sentences. *In re A.D.*, 93 A.2d 888, 896-897 (Pa. Super. 2014) (citing *In re Adoption of S.P.*, *supra*). Parental incapacity caused by no-contact orders is relevant to a §2511(a)(2) analysis, and if the order is issued to protect a child from further harm at the hands of the parent, then it is dispositive. *Id.* Despite a parent's inability to directly provide parental care and stability to a child when complying with a no-contact order, a court cannot put a child's needs on hold simply because a parent must abide with the order. *Id.*

constituting a grave threat to a child and is thereby unfit to associate with their child(ren). *In re C.B.*, 861 A.2d 287, 294 (Pa. Super. 2004) (citing *In re C.J.*, *infra*). "Barring criminal acts committed upon the child, we can think of no action in which a parent could engage posing a graver threat to a child's welfare than killing the other parent." *In re C.J.*, 729 A.2d 89, 96 (Pa. Super. 1999) (citing *Green v. Sneeringer*, 635 A.2d 1074 (Pa. Super. 1993)). In the instant matter, Father is alleged to have killed the Mother. (N.T. 02/03/21, pg. 45). The CUA Case Manager testified that Father has not had any visits with Child. (N.T. 02/03/21, pgs. 55, 58, 61). Father confirmed he has had no visits and no contact with Child since the beginning of the case, due to the stay-away order. (N.T. 02/03/21, pgs. 65-66). Father stated the only effort he made toward facilitating a relationship with Child was sending relatives to court hearings. (N.T. 02/03/21, pg. 66). There is no other evidence of Father's attempts to create or maintain a relationship with Child. The CUA Case Manager testified that Father has not sent money, gifts, or anything to Child or Child's caregiver. (N.T. 02/03/21, pgs. 55-56). Father testified that he loves his daughter, wishes to be a part of her life, and wants to retain his parental rights. (N.T. 02/03/21, pg. 66). However, a parent does not perform their duties by displaying merely a passive interest in a child's development, nor do they protect their parental rights by simply stating they wish to retain them. *In re B.,N.M.*, *supra*. Further, the cause of a parent's incarceration is relevant to the §2511(a)(2) analysis, where their actions were a factor in support of a child's removal. *In re. Z.P.*, *supra*. The Child came into DHS custody due to the allegations against Father. The incident between Mother and Father occurred while Child was in the home. The trial court only heard evidence that Child was without parental care due to Mother's death allegedly at the Father's hands. (N.T. 02/03/21, pgs. 45, 58, 72). Father is also apparently unaware of any potential release date or sentence he faces, and so cannot provide Child with care within a reasonable period of time. (N.T. 02/03/21, pgs. 67-69). According to Father's Criminal Docket (DHS Exhibit 1 – N.T. 02/03/21, pg. 55), he faces a non-capital homicide charge under 18 Pa.C.S.A. §2502. Father could face a term of life imprisonment should he be convicted of first- or second-degree homicide. Under 11 Pa.C.S.A. §1102(d), Father could face a term of up to forty-years if convicted of third-degree homicide. Along with a charge of homicide, Father also faces seven other charges, including child endangerment under 18 Pa.C.S.A. §4304, which could come with a seven-year sentence as a

potential third-degree felony[7]. The trial court cannot say what sentence Father may face, as the accessible docket sheet does not indicate the degrees of offense he faces, nor has he been convicted of any crimes in this case yet, but with a life sentence possible, Father faces the risk of never being able to parent the Child. Based on the offenses Father faces, there is a significantly probability that Child will have reached adulthood by the time Father is released from prison. Even if Father is found not guilty of all criminal charges, Father would still have to successfully complete his ARC services, find housing, stable income, complete anger management, and engage in visits to create a bond and relationship with Child as ordered by the trial court at the permanency review hearing of September 4, 2020. (N.T. 02/03/21, pg. 52). While Father asserts that he has an overwhelming, genuine interest, and sincere effort to maintain a relationship with Child, the record is devoid of evidence to support this assertion. Apart from sending family members to court hearings, Father has made no other attempts to show interest in the development of the Child. Father has an affirmative duty to overcome any obstacles while incarcerated. There is no reason why he cannot write or send cards or request information about the physical and emotional well-being of the Child by consistently communicating with the CUA Case Manager. Father has not seen Child since she was but five-days old. (N.T. 02/03/21, pgs. 55-56, 65-66). Father was aware of the CUA Case Manager and had her contact information. (N.T. 02/03/21, pg. 47). At the time of the termination and goal change trial on February 3, 2021, Child had been in DHS custody for over two years, at twenty-six months. (N.T. 02/03/21, pg. 76). Father's objectives were to comply with the stay-away order and be in communication with the CUA. Father was aware of these objectives and was minimally compliant. (N.T. 02/03/21, pgs. 48, 59-60, 64). Father was in contact with CUA not more than twice over the phone. (N.T. 02/03/21, pg. 48). On one of these occasions, Father's mother assisted with the telephone call. (N.T. 02/03/21, pg. 49). Father did complete a parenting class and claims to have completed an anger management class, but the CUA Case Manager has not received any verification of completion. Father has previously been found minimally compliant. (N.T. 02/03/21, pgs. 60-61, 64). Father has no foreseeable release date and the conditions that brought Child into care remained with Father unable to remedy them within the

---

[7] 18 Pa.C.S.A. §4304(b)(2) increases the grade of an offense one grade if the child is under six years of age at the time of the offense. Without the enhancement, this is a misdemeanor of the first degree; therefore, with a single grade increase, it becomes a felony of the third degree. However, Father's charge could be graded higher dependent on the facts proven by the prosecutor at his trial.

next six months. Child needs permanency. Child cannot wait for Father to be released from jail and wait for him to put himself in a position to resume his parental responsibilities. Father is unable to provide essential parental care, control, and subsistence necessary for Child's physical and mental well-being at the time of the termination trial. Termination under 23 Pa.C.S.A. §2511(a)(2) was proper. There is no error or abuse of discretion.

After a finding of any grounds for termination under Section (a), the court must, under 23 Pa.C.S.A. §2511(b), also consider what - if any - bond exists between parent and child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship". *In re Adoption of T.B.B.* 835 A.2d 387, 397 (Pa. Super. 2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008). In instances where there is a parent-child bond, the Child's need for safety and security can outweigh the protection of the parent-child bond. *In re Adoption of J.N.M.*, 177 A.3d 937, 946 (Pa. Super. 2018) (*citing In re M.M.*, 106 A.3d 114, 119 (Pa. Super. 2014)). The trial court must determine that the bond between a parent and a child cannot be in only one direction. There must be a bilateral relationship that roots from a parent's willingness to learn appropriate parenting skills and be able to provide stability to the child. *In re K.K.R.-S.*, 958 A.2d 529, 534 (Pa. Super. 2008). Additionally, a bond is not just a positive relationship between a child and a parent. Being a parent means assuming responsibility so that a real bond develops, not just a casual relationship. Children have the ability to know, love, and sometimes have an enjoyable time with a parent that have little to do with their upbringing. *In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003). In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis depends on the circumstances of the particular case. *Id*. However under 23 Pa.C.S.A. §2511(b), the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, or medical care, if found to be beyond the control of the parent. There is no requirement that a child be placed in a pre-adoptive home as a pre-condition to the termination of a parent's rights. *In re K.C.F.*, 928 A.2d 1046, 1053-1054 (Pa. Super. 2007). The trial court should consider the best interest of the child as it exists presently, rather than the facts at the time of the original petition.

Father has been incarcerated pre-trial and unable to visit Child for over two years. (N.T. 02/03/21, pgs. 65-66, 76). Father has had no contact with Child for the life of the case. (N.T. 02/03/21, pgs. 55, 58, 61, 65-66). Father was denied bail on December 17, 2018. As a result of the bases for adjudication and the criminal allegations, Father was ordered to stay-away from the Child, pursuant to the order of the Dependency Court at the shelter care hearing and pursuant to a criminal court order. (N.T. 02/03/21, pgs. 49-50). At the shelter care hearing, the Dependency Court found a grave threat as to father, and suspended his visits with Child. (N.T. 02/03/21, pg. 79). The heinous crime allegations against the Father demonstrate a severe mental and moral deficiency that Father is unfit to associate with child. According to Father's Criminal Docket (DHS Exhibit 1 – N.T. 02/03/21, pg. 55), he faces a non-capital homicide charge under 18 Pa.C.S.A. §2502, among other offenses. Father has no foreseeable release date. (N.T. 02/03/21, pgs. 68-69). Father has testified that the only effort her made toward facilitating a relationship with Child was sending family members to court hearings. (N.T. 02/03/21, pg. 66). The CUA Case Manager testified he has not been able to form a parental bond with Child. (N.T. 02/03/21, pg. 61). Even prior to his incarceration and Mother's alleged murder, Father had not established any parental bond with the Child. (N.T. 02/03/21, pg. 53). Child was five days old at the time of the incident and placed with Maternal Aunt. Except for the first five days of her life, Child has known no caregiver other than Maternal Aunt and has been doing very well in her kinship care. (N.T. 02/03/21, pg. 59). Father is unable to meet Child's basic needs and there is no parental or beneficial bond to preserve. (N.T. 02/03/21, pgs. 61, 66). The parental bond is with the kinship caregiver. The record reflects that Child is in a loving environment with the kinship caregiver, Maternal Aunt. (N.T. 02/03/21, pgs. 55-56). The Maternal Aunt provides for all the basic needs of the Child. The Child is developmentally on target. (N.T. 02/03/21, pgs. 45-47). Child does not know Father since she has been with Maternal Aunt throughout her life, except for the first five days. (N.T. 02/03/21, pgs. 45-46). Father has made no attempt to show interest with the development of the Child. During his incarceration, Father has not sent any gifts or any cards to the CUA Case Manager to be given to Child. (N.T. 02/03/21, pg. 55). Terminating Father's parental rights would not cause irreparable harm to the child. and adoption is in the best interest of the Child. (N.T. 02/03/21, pg. 56). The testimony of the DHS witness was credible. The trial court's termination of Father's parental rights to Child under 23 Pa.C.S.A. §2511(b) was proper and there was no error or an abuse of discretion.

Father also asserts that the court erred in changing Child's permanency goal from reunification to adoption. Pursuant to 42 Pa.C.S.A. §6351, when considering a petition to change a dependent child's goal, the trial court must consider, *inter alia*:

> (1) the continuing necessity for and appropriate of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal of the child; (5) a likely date by which the goal might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty two months.

*In re A.B.*, 19 A.3d 1084, 1088-1089 (Pa. Super. 2011). In a change of goal proceeding, the child's best interest must be the focus of the trial court's determination. The child's safety and health are paramount considerations. *In re A.H.*, 763 A.2d 873, 877 (Pa. Super. 2000). Pennsylvania's Juvenile Act recognizes family preservation as one of its primary purposes. *In the Interest Of R.P. a Minor*, 957 A.2d 1205, 1220 (Pa. Super. 2008). As a result, welfare agencies must make efforts to reunify the biological parents with their child. Nonetheless, if those efforts fail, the agency must redirect its efforts toward placing the child in an adoptive home. Agencies are not required to provide services indefinitely when a parent is unwilling or unable to apply the instructions received. *In re R.T.*, 778 A.2d 670, 681 (Pa. Super. 2001). A child's life cannot be put on hold in the hope that parent will someday summon the ability to handle and assume the responsibilities of being a parent. *In re A.B.*, 19 A.3d at 1089. The trial court should consider the best interest of the child as it exists presently, rather than the facts at the time of the original petition.

Father has been incarcerated pre-trial for the life of the case and has been charged with and alleged to have committed Mother's murder. (N.T. 02/03/21, pgs. 45, 58). Child was in the home at the time of Mother's death. (N.T. 02/03/21, pg. 45). As a result of the bases for adjudication and the criminal allegations, Father was ordered to stay-away from Child and the caregiver pursuant to the order of the trial court at the shelter care hearing and pursuant to a criminal court order. (N.T. 02/03/21, pgs. 49-50). At the shelter care hearing, the trial court found that Father presented a grave threat to Child and visits were suspended. (N.T. 02/03/21, pg. 79). Father's SCP objectives

were to comply with the stay-away order and make outreach to CUA. (N.T. 02/03/21, pgs. 48, 59-60, 64). Father has had no contact with Child and has not seen her since the day of Mother's death when Child was five-days old. (N.T. 02/03/21, pgs. 55, 58, 65-66). The CUA Case Manager testified she spoke with Father over the phone not more than twice throughout the life of the case. (N.T. 02/03/21, pg. 48). Father did not make any affirmative actions to show interest in the development of the Child. Father has an affirmative duty to overcome any obstacles while incarcerated. There is no reason why he cannot write or send cards or request information about the physical and emotional well-being of the Child by consistently communicating with the CUA Case Manager. (N.T. 02/03/21, pgs. 55-56, 65-66). Father was aware of the CUA Case Manager and had her contact information. (N.T. 02/03/21, pg. 47). Father faces a non-capital homicide charge under 18 Pa.C.S.A. §2502 and seven other charges, including child endangerment under 18 Pa.C.S.A. §4304, which could come with a seven-year sentence as a potential third-degree felony. *See* Footnote 7. Father is currently awaiting trial in the Philadelphia county jail. Father has no foreseeable release date. (N.T. 02/03/21, pgs. 68-69). Even if Father is found not guilty of all criminal charges, reunification with Father would not be immediately viable. Father would still have to successfully complete his ARC services, find housing, stable income, complete anger management, and engage in visits to create a bond and relationship with Child as ordered by the trial court at the permanency review hearing of September 4, 2020. (N.T. 02/03/21, pg. 52). Father claimed that while incarcerated he has completed an anger management course and a parenting course; however, only proof of the parenting course was provided. (N.T. 02/03/21, pgs. 60-61, 64). Child has been in Maternal Aunt's care for the life of the case, since she was five days old, and knows no other home. (N.T. 02/03/21, pgs. 45-46, 59). Child has not had any visits with Father. (N.T. 02/03/21, pg. 55, 58). The CUA Case Manager testified that Child is in a loving environment with family support while in Maternal Aunt's care. (N.T. 02/03/21, pg. 56). The CUA Case Manager further testified that Father has no parental bond with Child. (N.T. 02/03/21, pg. 61). Father also presents a grave threat to Child, as discussed *supra*, due to his own actions. Given Child's age at the time of her entry into DHS care and her lack of visits with Father, Child does not know Father. Child has been in DHS custody for twenty-six months at the time of the termination and goal change trial. Child needs safety and permanency, neither of which Father can provide. Child's needs and safety are both consistently met in her current care with Maternal Aunt.

Father was minimally compliant with his SCP objectives. There is no realistic timeline within which Child and Father could be safely reunited, even upon his potential release from jail if found not guilty on his criminal case. It is in the Child's best interest to be freed for adoption. The trial court did not err or abuse its discretion when it changed Child's permanency goal from reunification to adoption pursuant to 42 Pa.C.S.A. §6351.

**Conclusion:**

For the aforementioned reasons, the trial court found that DHS met its statutory burden by clear and convincing evidence regarding termination of Father's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(2), and (b); and changing Child's goal from reunification to adoption pursuant to 42 Pa.C.S.A. §6351. The trial court's termination of Father's parental rights and changing of Child's goal was proper and should be affirmed.

By the court,

Joseph Fernandes J.